[No. D030096. Fourth Dist., Div. One. Feb. 15, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMAN HALL, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Discussion parts A. B. D. and E.

## COUNSEL

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Laura W. Halgren and Craig S. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BENKE, J.**—Norman Hall was convicted of one count of first degree murder with a finding of special circumstances and sentenced to a term of

life without the possibility of parole. He appeals, arguing prejudicial delay in prosecution, prosecutorial misconduct, the admission of an involuntary confession, improper restriction on defense evidence and failure to allow a statement of reasons for seeking a change of counsel.

FACTS

## A. *Prosecution Case*

On Thanksgiving Day 1980, 100-year-old Nora Hollenbeck was living in her home in Ocean Beach. A neighbor noticed that the lights in her house were off at 10:30 that evening but on again at 3:00 a.m. the next morning. That morning two neighbors went to Hollenbeck's home and found her dead in the bedroom with a blood-soaked pillowcase over her head. Hollenbeck bled to death after being beaten and stomped. There were signs of a forced entry. The bedroom was ransacked and Hollenbeck's color television was missing.

Jeffrey Shipper was a businessman in Mission Beach. He was acquainted with and purchased stolen television sets and other property from appellant in November 1980. On one occasion when Shipper purchased a medium-sized television set from him, appellant stated he had beaten an elderly woman during a robbery and may have killed her.

Appellant wrote a letter from Corcoran State Prison to the San Diego County District Attorney's Office on April 16, 1993, stating he wished to confess to a murder that occurred during a burglary in San Diego in November 1980. Appellant wrote that the confession was being forced from him.

In response, a district attorney's investigator met with appellant at the prison. Appellant first related he was being abused by prison staff who wished him to confess to the crime. He then told the investigator that about a week before Thanksgiving, he was not sure of the date, he burglarized a house in Ocean Beach. The description of the house given by appellant generally fit Hollenbeck's. Appellant stated he was very drunk. As he searched the bedroom, he was startled by a person in the bed. Appellant, who was wearing gloves, struck the person with his fists. Appellant took jewelry from the house. While stating he saw a television in the living room, he did not mention taking it. Appellant remembered his friend Shipper had seen a news story about the crime and told him about it. Appellant believed the crime occurred the week before Thanksgiving.

## B. *Defense Case*

Evidence was offered that fingerprints, DNA samples and other indicia of identity found in the victim's house after the crime did not match prints and samples taken from appellant.

Appellant's aunt testified the residence described by appellant in his confession fit that of his childhood home in Ocean Beach.

Evidence was presented to support the defense theory that appellant made a false confession concerning a murder in San Diego in an attempt to change his place of confinement and escape harassment and abuse by guards and prisoners at various state correctional facilitates.

DISCUSSION

### A., B.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## C. *Confession*

Appellant argues his confession to the Hollenbeck murder made to a district attorney's investigator at Corcoran State Prison on April 22, 1993, was involuntary and should not have been admitted against him.

### 1. *Background*

Appellant filed an in limine motion to exclude his confession. Appellant claimed his confession was coerced by guards who threatened him with death if he did not confess to a murder. He argued in the alternative that even if no death threats were made, his confession, designed to accomplish his transfer from Corcoran, was nonetheless coerced, involuntary and inadmissible since he believed his life was in danger if he did not get out of that institution.

In reply the prosecutor stated appellant was not harassed or abused by prison personnel and in fact had continually threatened prison staff and attempted to manipulate his placement with lies and malingering.

### a. *Prosecution Evidence*

Appellant was transferred to Corcoran State Prison on March 5, 1993, and remained there until April 22, 1993. On April 6, 1993, appellant wrote a

---

*See footnote 1, *ante*, page 232.

letter to the San Diego County District Attorney stating he wished to confess to a murder and that his confession was being coerced by prison staff. On April 22, 1993, an investigator for that office, Patrick Harn, met with appellant at Corcoran. Appellant began by stating he had been threatened with death if he did not confess to a San Diego murder. Appellant stated that on April 19, 1993, three days before the interview with Harn, guards Poindexter, Torres, Mendoza and Miller took him to a cell occupied by an inmate who was screaming that he did not want anyone in his cell. When the guards put appellant in the cell, the inmate immediately kicked him in the chest, knocking him out of the cell and nearly over the tier railing. The guards laughed and stated "See who's next." Appellant stated guards put pressure on other inmates to hurt him. Appellant stated that on April 6, 1993, his cellmate, Steve Fishel, told him he would have to do something to appellant or he would "get it himself." Appellant related another incident in April in which an inmate hit him in the face. When treated in the medical unit, he was asked if he was ready to confess.

Appellant also stated he had been the subject of state experiments since he was four years old. Appellant told the investigator that while in Soledad Prison he was harassed and abused for six years in an attempt to make him confess to a murder. Appellant also stated that while in Folsom Prison he had been harassed and abused. He was told he would never get out unless he confessed to a murder. Appellant stated he filed lawsuits against doctors at Folsom Prison but dropped them when he was told he would be killed if the cases continued. Appellant related that while at Pelican Bay State Prison he was told he would be killed unless he confessed to a murder.

Corcoran guards Torres and Miller testified they had never abused or threatened appellant.[5] Guard Mendoza had no recollection of appellant and had never harassed an inmate to get him to confess to a murder.

A letter, written by appellant in August 1991, was admitted in which he stated he had been the victim over many years of experiments conducted by the Department of Corrections. A letter, written by appellant in January 1993, was also admitted before he was incarcerated at Corcoran, stating that for the last nine years the Department of Corrections had been trying to force him to confess to a murder. Another letter, written by appellant on March 22, 1993, was admitted in which he indicated a desire to confess to a murder.

b. *Defense Evidence*

Investigator Harn stated he visited appellant at Tehachapi State Prison in September 1993. Appellant would not discuss the substance of his earlier

---

[5]Guard Roscoe Poindexter invoked his right against self-incrimination when asked if he ever tried to coerce appellant into confessing to murder. Poindexter had apparently been fired because of physical abuse of inmates.

confession, stating it was coerced. In April 1996, after his arrest, appellant again refused to discuss the matter with Harn and again stated his confession was coerced.

A Corcoran guard observed appellant being assaulted by another inmate in the exercise yard. He could not remember the year the incident occurred.

Steven Fishel was appellant's cellmate at Corcoran for about two weeks in April 1993. Fishel stated he was ordered by a guard whose name he could not remember to beat appellant. Fishel did assault appellant but not because the guard told him to do so. Fishel stated he was not disciplined for attacking appellant. Fishel stated appellant would not go to the exercise yard because he was afraid something would happen and the guards would shoot him.

William Rigg, range master at Corcoran, testified that during the period March 5, 1993, to April 21, 1993, approximately 50 shots were fired by guards. The shots could be heard in the area where appellant was housed. Rigg also stated during that time period staff and inmates would manipulate cell moves to accomplish gang activity and assaults.

Richard Caruso testified he was a control booth officer at Corcoran and worked with Officer Poindexter. On one occasion, Poindexter indicated to Caruso that appellant was to be moved. When Caruso so informed appellant, he stated he would not move. Poindexter and another guard told Caruso to open appellant's cell door. When he did so, the guards entered, put appellant in restraints and removed him. This was unusual since normally a supervisor would be notified before such an action was taken.

James Esten, an expert on correctional files, found forms missing from appellant's correctional file for March and April 1993. These forms were prepared every shift and by each guard involved in any activity with an inmate. Esten could not recall a similar form gap in any record.

Esten also found that forms were missing from the file that should have documented appellant's being taken to the infirmary or a hospital and others that should have reflected cell changes that resulted in altercations. Esten had never seen files where these documents were missing.

c. *Ruling*

The trial court found guards did not threaten or abuse appellant to get him to confess to a crime. The court stated the only support for such a claim was appellant's statements to investigator Harn. The court concluded those

statements—and indeed all of appellant's statements—were not worthy of belief.

The court then addressed whether there was conduct by guards which, while not intended to produce a confession, nonetheless, caused appellant to confess, and next, whether that conduct was coercive for the purposes of a voluntariness analysis. The court noted every voluntariness case it reviewed involved a casual connection between improper conduct by an interrogator and a confession. The court noted the exclusion of coerced confessions is based on their inherent unreliability, the desire to discourage misconduct during interrogations and a societal aversion to wresting a confession from a suspect.

The court found that the interrogator, Harn, engaged in no improper conduct in taking appellant's confession and had no contact with any prison guards involved with appellant. The court agreed that appellant was, based on his own history and behavior, placed in prison units that held the most difficult, dangerous and assaultive inmates. The court stated it was sure discipline was harsh, assaults were a daily occurrence and that undoubtedly appellant was on occasion beaten by other inmates. The court stated, however, there was no evidence appellant was ever seriously injured and no evidence appellant was ever assaulted by a guard. The fact appellant's housing was unavoidably unpleasant did not amount to coercive conduct by the state.

The court noted two possible incidents that occurred at Corcoran in the weeks before appellant's confession that might have involved misconduct by guards. The first was when he was beaten by Fishel. The court found the beating was not a serious one but noted evidence that Fishel was encouraged by guards to assault appellant. The second incident, three days before the confession, involved appellant's being placed by guards in a cell with an inmate who did not want appellant with him. The inmate kicked appellant, and, while appellant was not seriously injured, there was evidence the assault was done with the acquiescence of guards.

The court stated that even accepting for the sake of argument these incidents had occurred, they could not have motivated appellant to confess to a crime. The court noted that prior to either of these incidents, appellant indicated a strong desire to confess. The court found the cited incidents did not motivate him to confess and the confession made to investigator Harn was voluntary beyond a reasonable doubt.

2. *Discussion*

Appellant argues his confession to investigator Harn was involuntary and should have been excluded. Appellant contends he confessed not

because of any impropriety by the interrogating officer but in an effort to escape the acts of violence instigated against him by guards at Corcoran State Prison and his fear based on general conditions at the prison that if he remained in the institution he would be killed. Appellant does not assert, in light of the trial court's factual finding, that guards were attempting to compel him to confess to a crime. It is appellant's claim, however, that it was the misconduct of guards, even if not directed at extracting a confession, that led to his statement. His confession, therefore, was involuntary and should have been excluded.

While deferring to any factual findings made by the court below, we independently review the legal issue of the voluntariness of the statements in question. (*People v. Memro* (1995) 11 Cal.4th 786, 826 [47 Cal.Rptr.2d 219, 905 P.2d 1305].) In deciding that issue we review the entire record, noting all the surrounding circumstances including the characteristics of the accused and the nature of the interrogation. (*People v. Vasila* (1995) 38 Cal.App.4th 865, 873 [45 Cal.Rptr.2d 355].) The present rule is that the burden of proof is on the People to show by a preponderance of the evidence that the suspect's statements were voluntary. The crime in this case, however, was committed before the adoption of California Constitution, article I, section 28, subdivision (d) (Proposition 8), and the prosecution is required to prove voluntariness beyond a reasonable doubt. (*People v. Anderson* (1990) 52 Cal.3d 453, 471 [276 Cal.Rptr. 356, 801 P.2d 1107].)

The courts have provided various definitions of involuntariness. In *Hutto v. Ross* (1976) 429 U.S. 28, 30 [97 S.Ct. 202, 203, 50 L.Ed.2d 194], the court stated a confession is involuntary and excludible as a denial of due process when it "was ' "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." ' "

As the court in *People v. Cahill* (1994) 22 Cal.App.4th 296, 310 [28 Cal.Rptr.2d 1], stated, however: "The application of the axiom that involuntary confessions are not admissible is not always a simple matter; the concept of voluntariness is multifaceted and has been described as a 'potential morass.' [Citations.] '[A] complex of values underlies the stricture against use by the state of confessions which, by way of convenient shorthand, this Court terms involuntary, and the role played by each in any situation varies according to the particular circumstances of the case.' [Citation.]" (Fn. omitted.)

In explaining this "complex of values," the court cited *Jackson v. Denno* (1964) 378 U.S. 368, 385-386 [84 S.Ct. 1774, 1785, 12 L.Ed.2d 908,

1 A.L.R.3d 1205]: " 'It is now inescapably clear that the Fourteenth Amendment forbids the use of involuntary confessions not only because of the probable unreliability of confessions that are obtained in a manner deemed coercive, but also because of the "strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will". . . .' " (*People v. Cahill, supra*, 22 Cal.App.4th at pp. 310-311, fn. 4.)

The question we address in this case is whether a confession is "involuntary" within the meaning of the Fourteenth Amendment of the United States Constitution and article I, sections 7 and 15 of the California Constitution when the improper influences which motivate a subject to confession were not carried out with the intent to extract a confession. We conclude it is not.

We are cited no case, and have found none, which analyzes voluntariness when a defendant confesses to a crime not as the result of an improper interrogation but rather as a device to escape an environment made dangerous by official misconduct. Involuntariness cases invariably involve misconduct directed, in one way or another, at compelling a defendant to confess, and the vocabulary used to describe the policy basis for excluding such confessions is most often couched in terms reflecting that context. Thus, cases talk, for example, of "extracting" or "wringing" confessions from a suspect and state that ours is an accusatorial rather than an inquisitorial system.

We conclude a confession should be excluded when the process undertaken to secure it involves threats, promises, violence or other forms of improper influence. We do not believe, however, that due process requires a confession be excluded when, while misconduct may in whole or part motivate it, that misconduct was in no way part of the investigation of criminal activity or a part of the process of interrogation. In our view the exclusion of confessions is supported by values concerned with attempts to secure incriminating statements and the desire to discourage improper and unfair investigations and interrogations. We do not believe that exclusion is required when general governmental misconduct, unrelated to any investigation or process of interrogation, results by mere happenstance in a confession.

While misconduct is certainly not to be condoned, the exclusion of highly relevant evidence exacts a heavy price. That price we readily pay when the threat of exclusion has the salutary effect of encouraging fair and lawful investigations and interrogations. The exclusion of a confession, however, is

less supportable when the misconduct related to it was in no way related to the extraction of that confession or the solving of a crime. This is so since the threat of exclusion can have no meaningful effect on the conduct of those not engaged in investigation and interrogation.

We note also that courts cite as a consideration in excluding confessions deemed involuntary that oppressive interrogation practices greatly increase the possibility that statements so extracted are unreliable. When the misconduct that induces a confession does not involve interrogation or investigative practices, however, and is rather the result of happenstance, that danger, while not reduced to zero, is far less.

We are also mindful that courts have cited as a basis for the exclusion of confessions resulting from unfair conduct that the use of such evidence undermines our ideal that convictions should be based on freely secured evidence and not on coercion. Again, we believe such rationale meaningful only in the context of an unfair or unlawful investigation or interrogation. If the confession is the unexpected and unsought result of misconduct not undertaken as part of an investigation or interrogation, it is not coercive in the sense that term is used in the due process context.

These conclusions are consistent with this court's opinion in *People v. McElheny* (1982) 137 Cal.App.3d 396 [187 Cal.Rptr. 39]. McElheny and a second robber were confronted by the police. A gunfight ensued in which a police officer was wounded and McElheny's accomplice was killed. McElheny escaped and was at large for approximately an hour. When apprehended, he was beaten, his face was forced down into the body of his dead accomplice and he was told "this is your murder, punk." (*Id.* at p. 400.) He was then taken by the hair to a police car containing barking dogs and was told by an officer he ought to be put in that car. McElheny was transported to the police station where about four hours later he waived his rights, was interrogated in a noncoercive manner by officers not involved in his arrest and confessed to the robbery. (*Id.* at pp. 399-401.)

This court excluded McElheny's confession, finding that his will was overborne by physical and psychological abuse. In that case, unlike the present one, the misconduct occurred as part of the investigation of a particular crime. Excluding the confession would convey to other officers that if they engage in misconduct during an investigation, they risk tainting evidence, such as a later confession, helpful to conviction.

The misconduct in *McElheny*, again unlike the present case, was intimately related to the investigation of the crime and to those charged with

securing evidence in support of a prosecution. The misconduct in that case, therefore, implicated the value that we should secure evidence and advance prosecutions by fair and lawful means. Those values are not so readily at issue when the misconduct is unrelated to an investigation and results in a confession only by happenstance.

The trial court did not err in admitting appellant's confession.

D., E.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

Judgment affirmed.

Work, Acting P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 24, 2000.

---

*See footnote 1, *ante*, page 232.